UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER DRACOPOULOS, et al.,<br><br>Defendants. | Case No. 21-cv-09623-LB<br><br>**ORDER PARTLY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 53, 59 |

**INTRODUCTION**

Plaintiff United States of America sued defendant Peter Dracopoulos pursuant to 26 U.S.C. §§ 7401 and 7403 to reduce tax assessments to judgment and foreclose tax liens on Mr. Dracopoulos's principal residence.[1] The parties now move for summary judgment: the government to establish its assessments, and Mr. Dracopoulos to challenge penalties for late filing and payment of tax assessments.[2] The amount of the underlying tax debt is undisputed.[3]

The court grants summary judgment to the government on the amount of penalties and interest: at least as to the math problem of what is owed on the government's theory of the case, the

---

[1] Compl. – ECF No. 1. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Pl.'s Mot. – ECF No. 53; Def.'s Mot. – ECF No. 59.

[3] Stip. – ECF No. 52; Pl.'s Mot. – ECF No. 53; Pl.'s Reply in Supp. of Pl.'s Mot. – ECF No. 62.

United States District Court
Northern District of California

government met its burden.[4] The remaining issues are (1) whether Mr. Dracopoulos is entitled to an abatement of penalties on the ground that his personal circumstances, including age and blindness, provide reasonable cause that excuses his late filing of tax returns and late payment of taxes, and (2) whether he can enforce a revenue officer's promise to him that he could have a life estate in his house. The court orders further briefing on these issues (as set forth below).

## STATEMENT

Mr. Dracopoulos was born in San Francisco in 1940 and is legally blind.[5] He has lived at his home (the potentially foreclosable property at 267 Brussels Street, San Francisco) since birth, and he inherited it from his mother in 2000. She raised him there (alone, because his father died when he was one), and he lived there for most of his life (other than his time as a boarding student in high school at the California School for the Blind in High School and between 1996 and 2000).[6] He needs to live in safe, familiar surroundings because of his blindness.[7] He can function in his home but because he is blind, he relies on a support network, including people who (variously) live with him, help him write checks, shop for food, and address the needs of day-to-day life. He can bank by telephone but cannot use a computer or review, create, or recreate financial documents.[8]

Mr. Dracopoulos started a bookstand called Alcatraz Books in 1973 on Pier 47 on the wharf (now at Pier 41), runs the business on his own (with the occasional employee), and sells souvenirs, snacks, and magazines.[9] His business had closures over the years: for example, for over four years for remodeling from 1997 to 2001 and during the pandemic.[10]

---

[4] Corrected Assessments Chart – ECF No. 62-3.

[5] Dracopoulos Dep., Ex. 1 to Bissell Decl. – ECF No. 53-1 at 7 (p. 13:22), 15–17 (pp. 32:10–34:8); Dracopoulos Decl. – ECF No. 58-2 at 21 (¶ 3).

[6] Dracopoulos Dep., Ex. 1 to Bissell Decl. – ECF No. 53-1 at 6 (p. 6:13–14), 12 (p. 24:4–18); Dracopoulos Decl. – ECF No. 58-2 at 21 (¶¶ 3–4).

[7] Dracopoulos Decl. – ECF No. 58-2 at 21 (¶ 5).

[8] *Id.* (¶ 9); Dracopoulos Dep., Ex. 1 to Gonzalez Decl. – ECF No. 58-2 at 3–12 (pp. 14, 19, 22, 30–38).

[9] Dracopoulos Dep., Ex. 1 to Bissell Decl. – ECF No. 53-1 at 8–9 (pp. 20:17–21:9), 13 (p. 25:1–14), 23–25 (pp. 40:20–41:13, 42:10–16).

[10] *Id.* at 10–11 (pp. 22:9–23:25), 13 (25:1–5).

Mr. Dracopoulos untimely filed Forms 1040 for tax years 2002–2009 and 2012–2014. He timely filed forms for 2010 and 2015. On all forms, he reported tax liabilities and did not fully pay them. The IRS timely assessed liabilities based on the defendant's self-reported income and determined an additional $1,011 deficiency for the 2007 tax year. Despite timely notice and demand for payment of the assessed amounts, Mr. Dracopoulos has not made full payment of the assessed amounts to the United States.[11] The IRS recorded Notices of Federal Tax Liens with the San Francisco Assessor-Recorder Office.[12] The assessment date, the amounts assessed, and penalties, interest, and other statutory additions are as follows:[13]

| Period | Assessment Date | Assessed Amount | Outstanding Balances as of 5/11/2023 |
| --- | --- | --- | --- |
| 2002 | 5/10/2010 | $ 24,335.00 (tax)<br>$  5,475.37 (lfp)[14]<br>$  6,083.75 (ftp) | $ 84,135.84 |
| 2003 | 5/10/2010 | $ 16,908.00 (tax)<br>$     463.25 (etp)<br>$  3,804.30 (lfp)<br>$  4,227.00 (ftp) | $ 56,919.93 |
| 2004 | 5/10/2010 | $ 29,977.00 (tax)<br>$     538.36 (etp)<br>$  6,744.82 (lfp)<br>$  7,494.25 (ftp) | $ 96,545.87 |
| 2005 | 5/17/2010 | $ 18,231.00 (tax)<br>$     731.26 (etp)<br>$  4,101.97 (lfp)<br>$  4,557.75 (ftp) | $ 56,117.44 |

[11] Stip. – ECF No. 52 at 2 (¶¶ 2–7).

[12] Liens, Ex. C to Burks Decl. – ECF No. 53-4.

[13] The government's initial summary-judgment motion had errors and transcription errors, but the supporting Form 4340s have the correct assessments. The United States corrected the errors in its motion in its reply at ECF No. 62 and submitted a corrected assessments chart that reflects the evidence. Forms 4340, Ex. 2 to Burks Decl. – ECF No. 53-5; Burks Decl. – ECF No. 62-1 at 2–6 (¶¶ 8–17); Integrated Data Retrieval Sys., Ex. 6 to *id.* – ECF No. 62-2; Corrected Assessments Chart – ECF No. 62-3.

[14] The acronyms lfp, ftp, and etp (in the government's submissions) are, respectively, late-filing penalty, failure-to-pay-tax penalty, and estimated-tax penalty.

United States District Court
Northern District of California

| | | | |
|---|---|---|---|
| 2006 | 5/17/2010 | $ 18,256.00 (tax)<br>$      863.94 (etp)<br>$   4,107.60 (lfp)<br>$   3,468.64 (ftp) | $ 51,747.25 |
| 2007 – Self-reported<br>2007 – Exam | 11/14/2011<br><br><br>6/3/2013 | $   2,046.00 (tax)<br>$      460.35 (lfp)<br>$      439.89 (ftp)<br><br>$   1,011 (tax) | $  7,378.55 (total for 2007) |
| 2008 | 11/7/2011 | $   3,132.00 (tax)<br>$      708.00 (lfp) | $  6,804.86 |
| 2009 | 6/13/2011 | $   3,229.00 (tax)<br>$      769.75 (lfp) | $  7,187.71 |
| 2010 | 9/5/2011 | $   2,176.00 (tax)<br>$        44.40 (ftp) | $  3,330.06 |
| 2012 | 10/20/2014 | $   3,122.00 (tax)<br>$      600.41 (lfp)<br>$      253.51 (flp) | $  5,646.18 |
| 2013 | 8/31/2015 | $ 10,785.00 (tax)<br>$   2,426.62 (lfp)<br>$      916.72 (ftp) | $ 22,158.34 |
| 2014 | 3/7/2016 | $ 15,066.00 (tax)<br>$      215.19 (etp)<br>$   2,711.88 (lfp)<br>$      828.63 (ftp) | $ 29,325.72 |
| 2015 | 6/16/2016 | $   1,861.00 (tax)<br>$        18.61 (ftp) | $  3,011.89 |
| **Total as of 5/11/2023** | | | **$430,309.64**<br>($150,135.00 in taxes<br>before penalties) |

Mr. Dracopoulos used an accountant, Collin Ronsley, to file his taxes until Mr. Ronsley died in the late 1990s. When Mr. Dracopoulos's business reopened in 2001 (after the 1997–2001 hiatus), he had to start all over with his business.[15] He could not get copies of his tax returns from Mr. Ronsley's widow and tried to hire someone in the early 2000s, but could not afford it. Mr.

---

[15] Dracopoulos Decl. – ECF No. 58-2 at 21 (¶ 8).

Dracopoulos did not have to do anything; Mr. Ronsley "did everything and everything was fine."[16] Someone on the pier recommended an accountant, but Mr. Dracopoulos struggled because the accountant would not prepare returns or provide information unless Mr. Dracopoulos paid up front. He had just reopened his business, had no money, could not prepare the returns on his own, and had concerns about whether the new accountant had prepared the returns correctly.[17]

After his mother died, he had trouble just keeping up: "I was just messed up, you know, my head, mentally having to do things, I just — the only thing I was concerned with was keeping the house, you know, being able to keep the house. That was it, keep the house and keep the shop open even for what it was doing." He explained that he didn't keep records: "I wasn't — didn't do it. I didn't have anyone doing it. It was just nothing. I was living from day to day, I guess. Not what you should be doing but that's what I was doing."[18] In that time period, three of his four siblings died (two brothers and a sister) (the fourth sister is 92 and lives in Chicago).[19]

He struggled financially: for a while, he could not pay his mortgage and faced foreclosure, but ultimately obtained a loan modification from Wells Fargo.[20]

Now, with assistance, "I've been paying — you know, I've done everything right since, you know, Rob has been doing my, you know, things."[21] He explained that "other than being really just messed up and screwed up, I don't have any, you know, answers. I'm not going to make up anything . . . . I was just paying attention to being able to keep the house and the shop."[22]

The IRS case history supports Mr. Dracopoulos's narrative.

In 2018, an IRS revenue officer spoke with his counsel regarding the tax liabilities. After counsel told the officer that Mr. Dracopoulos could not afford to pay the balance without

---

[16] Dracopoulos Dep., Ex. 1 to Gonzalez Decl. – ECF No. 58-2 at 13–14 (pp. 44:11–45:21), 15 (p. 47:19–23), 17 (p. 51:14–19).

[17] Id. at 16 (p. 49:10–16).

[18] Dracopoulos Dep., Ex. 1 to Gonzalez Decl. – ECF No. 58-2 at 17 (p. 51:1–13).

[19] Id. (p. 51:14–19).

[20] News Article, Ex. 5 to Gonzalez Decl. – ECF No. 58-2 at 57–63.

[21] Dracopoulos Dep., Ex. 1 to Gonzalez Decl. – ECF No. 58-2 at 18 (p. 52:1–7).

[22] Id. at 17–18 (pp. 51:20–52:24).

United States District Court
Northern District of California

mortgaging his home, the officer stated that the IRS would initiate a foreclosure suit. The IRS transcript reflects the conversation and says, "[w]ith these suits filed, the IRS will allow the [taxpayer] to stay in his home until he passes. The IRS will enforce[] on the property once he is gone." The IRS told the attorney to "communicate the IRS plan to file a suit to foreclose with a life estate, because the IRS will sell the property when the [taxpayer] passes."[23] The parties agree that the IRS revenue officer told Mr. Dracopoulos that the IRS would pursue judicial enforcement of the tax liens but would recommend a life estate for him in the property.[24]

On November 15, 2018, the IRS revenue officer was told to "advise the taxpayer about the Taxpayer Advocate Service (TAS), provide Form 911 [the form to request taxpayer assistance], . . . and explain its provisions[.] [I]f the taxpayer indicates that the planned foreclosure of the principal residence would create a hardship, the [revenue officer] will assist the taxpayer with the preparation of Form 911 and should forward the form to the local Taxpayer Advocate Service office if the revenue officer cannot or will not provide the requested relief (see IRM 13.1.7, Taxpayer Advocate Service Case Criteria, for other situations that qualify for Taxpayer Advocate referral and the appropriate procedures to follow)[.] Include a summary statement in the case history (see IRM 5.10.2.18(5))."[25] The IRS did not tell Mr. Dracopoulos about the Taxpayer Advocate Service office, explain its provisions, or assist with the preparation of the Form 911, and thus did not forward the case to the local Taxpayer Advocate Office.[26]

By May 26, 2020, the IRS revenue officer was "monitoring the case . . . to move forward with suit to foreclose on NFTL with estate claus[e.] [Taxpayer] is otherwise in filing and payment compliance."[27]

On April 8, 2021, the IRS transcript documents the following: "Heiner [presumably the revenue officer] reviewed suit request. Recommend approval. The suit will protect the statutes by reducing

---

[23] IRS History Tr., Ex. 3 to Gonzalez Decl. – ECF No. 58-2 at 28 (p. 16).

[24] Stip. – ECF No. 52 at 2 (¶ 10).

[25] IRS History Tr., Ex. 3 to Gonzalez Decl. – ECF No. 58-2 at 35–36 (pp. 35–36).

[26] Def.'s Opp'n to Pl.'s Mot. – ECF No. 58 at 17 (listing facts to be found at trial).

[27] IRS History Tr., Ex. 3 to Gonzalez Decl. – ECF No. 58-2 at 38 (p. 53).

United States District Court
Northern District of California

the claim to judgment and foreclose the lien, with a life estate so the taxpayer will not be removed from his residence. He has been diagnosed with terminal cancer and is in failing health. He has not disputed the liabilities from voluntarily filed returns but has continued to accrue. There is sufficient equity to pay the balance due and return proceeds to his estate after his passing. The action will not cause a hardship." On April 9, the file had "AD review." (AD is presumably an assistant or associate director.) "TM" approved the suit on April 12, 2021, and the case was "[r]outed to [adviser] for prep for counsel."[28]

In 2021, Mr. Dracopoulos worked with his mortgage lender, Wells Fargo, to renegotiate the interest rate on his loan. As a result of the IRS representations that he could live for the rest of his life in his home, he did not pursue other financial obligations, such as refinancing to take out equity when property values were higher and interest rates were lower. If the IRS revenue officer had not said that he could remain in his home for the rest of his life, he would have administratively appealed, requested penalty abatement, and tried to refinance his home when interest rates were lower to resolve the dispute.[29]

The court held a hearing on June 15, 2023. All parties consented to magistrate jurisdiction.[30] Other named defendants were Wells Fargo and the California Franchise Tax Board, which stipulated to lien priority. San Francisco County was severed from the case.[31]

### STANDARD OF REVIEW

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is

---

[28] *Id.* at 45 (p. 94).

[29] Dracopoulos Decl. – ECF No. 58-2 at 21 (¶¶ 10–12).

[30] Consents – ECF Nos. 7, 10, 12, 24.

[31] Stip. – ECF No. 30; Order – ECF No. 35.

1    genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

2    party. *Id.* at 248–49.

3         The party moving for summary judgment has the initial burden of informing the court of the

4    basis for the motion and identifying portions of the pleadings, depositions, answers to

5    interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

6    fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving

7    party must either produce evidence negating an essential element of the nonmoving party's claim

8    or defense or show that the nonmoving party does not have enough evidence of an essential

9    element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz*

10   *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

11   2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only

12   point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting

13   *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at

14   trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other

15   than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

16        If the moving party meets its initial burden, then the burden shifts to the nonmoving party to

17   produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at

18   1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the

19   mere allegations or denials of the adverse party's pleading, but must provide affidavits or other

20   sources of evidence that set forth specific facts showing that there is a genuine issue for

21   trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce

22   evidence to show a genuine issue of material fact, then the moving party is entitled to summary

23   judgment. *Celotex*, 477 U.S. at 322–23.

24        In ruling on a motion for summary judgment, the court does not make credibility

25   determinations or weigh conflicting evidence. Instead, it views the evidence in the light most

26   favorable to the non-moving party and draws all factual inferences in the non-moving party's

27   favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting*

28   *v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**ANALYSIS**

The three issues are whether the government has established the tax liability, whether Mr. Dracopoulos has established reasonable cause to abate the penalties, and whether the government is estopped from contesting that Mr. Dracopoulos has a life estate in his house. The answer to the first question is yes. The court sets forth a process to supplement the record for questions two and three.

## 1.  Tax Liability

In an action to collect unpaid taxes, the government satisfies its initial burden of proof "merely by introducing its assessment" of the liability. *United States v. Lee*, No. C-08-2595-JCS, 2011 WL 1344215, at *3 (N.D. Cal. Apr. 8, 2011) (quoting *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983)). The assessments carry a presumption of correctness and constitute a prima facie case. *Id.* (citing *Stonehill*, 702 F.2d at 1293). The presumption of correctness is "well established" and "makes it easier for the government to prove its case against the taxpayer in court." *Id.* (quoting *United States v. Fior D'Italia, Inc.*, 536 U.S. 238 (2002)). That said, the government's assessments of the deficiency must be "supported by a minimal evidentiary foundation." *Id.* (quoting *Stonehill*, 702 F.2d at 1293); *see also United States v. Janis*, 428 U.S. 433, 441 (1976) (denying the presumption of correctness when the government provided only a "naked assessment . . . without any rational foundation") (cleaned up); *Stonehill*, 702 F.2d at 1293 (this foundation is laid "once some substantive evidence is introduced demonstrating that the taxpayer received unreported income").

After the government "introduces the presumptively correct assessments, the burden of proof shifts to the taxpayer to show by a preponderance of the evidence that the assessments are arbitrary or erroneous." *Lee*, 2011 WL 1344215, at *3 (citing *Stonehill*, 702 F.2d at 1294). Summary judgment is appropriate where the taxpayer "adduces no evidence contesting the prima facie proof arising from the assessments." *Id.* (cleaned up) (quoting *United States v. Molitor*, 337 F.2d 917, 922 (9th Cir. 1964)).

There were errors in the government's initial summary-judgment motion that were corrected in the reply. The underlying evidence was accurate and self-authenticating. A clerical error in a filing

1   that the government later corrects does not foreclose summary judgment on the issue of whether

2   the government's calculations are correct. *Endres v. Tootell*, No. C10–3924 TEH, 2012 WL

3   2862417, at *6 (N.D. Cal. July 11, 2012) ("Legal memoranda and oral argument, in the summary-

4   judgment context, are not evidence, and do not create issues of fact capable of defeating an

5   otherwise valid motion for summary judgment.") (quoting *Smith v. Mack Trucks, Inc.*, 505 F.2d

6   1248, 1249 (9th Cir. 1974)). The parties do not contest the accuracy of the underlying forms or the

7   government's revised calculation of the interest and penalties.[32] The evidence proves the assessed

8   amounts, penalties, and interest. *United States v. Chila*, 871 F.2d 1015, 1017 (11th Cir. 1989)

9   (affirming summary judgment of taxpayer liability based on forms that provided the

10  "identification of the taxpayer, the character of the liability assessed, the taxable period, and the

11  date and amount of the assessment"); *United States v. Gonzalez ex rel. Gonzalez*, 323 F. Supp. 3d

12  1119, 1129–30 (N.D. Cal. 2018) ("The government need only provide sufficient evidence to prove

13  the amount of the underlying tax debt, 'which accrues interest by operation of statute.'") (quoting

14  *United States v. Sarubin*, 507 F.3d 811, 816 (4th Cir. 2007)).

15       The government is entitled to summary judgment on the amount of tax due. It also calculated

16  the interest and penalties correctly.

17

18  **2.   Penalty Abatement**

19       The government may impose a penalty for failing to timely file a return and an additional penalty

20  for failing to timely pay taxes owed "unless it is shown that such a failure is due to reasonable cause

21  and not due to willful neglect." 26 U.S.C § 6651(a)(1)–(2); 26 C.F.R. § 301.6651-1(a)(1)–(2);

22  *Spottiswood v. United States*, No. 17-cv-00209-MEJ, 2018 WL 1933521, at *3 (N.D. Cal. Apr. 24,

23  2018). The taxpayer has a "heavy burden" to show reasonable cause. *United States v. Boyle*, 469 U.S.

24  241, 245 (1985). "Reasonable cause" does not include "carelessness, reckless indifference, [or]

25  intentional failure." *Spottiswood*, 2018 WL 1933521, at *3 (quoting *Boyle*, 469 U.S. at 245).

26  Taxpayers must show they "exercised ordinary business care and prudence" but were unable to file

27

28  ———————————
    [32] *See, e.g.*, Def.'s Mot. – ECF No. 59 at 9–10.

United States District Court
Northern District of California

the return on time. *Id.* (quoting *Boyle*, 469 U.S. at 244). The same standard applies to late-filing and late-payment penalties. *Id.* (citing *Baccei v. United States*, 632 F.3d 1140, 1148 (9th Cir. 2011)).

 "Whether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a question of law." *Boyle*, 469 U.S. at 249 n.8.

Mr. Dracopoulos asserts that the following facts (all set forth in the Statement) support reasonable cause. He has been blind since his birth in 1940. He cannot handle financial paperwork on his own, and his longtime accountant — who handled his taxes — died during the four-year period that the City of San Francisco closed his business (1997 to 2001). He started from scratch after his business reopened in 2001. He tried unsuccessfully to get his records from his accountant's widow. He tried to hire someone else but he could not afford to pay up front and doubted the work. During this period, his mother and three of his four siblings died. (His fourth is ten years older and lives in Chicago.) Wells Fargo tried to foreclose on him. Eventually he got help, brought his filings current, and started paying. It took a while, but the IRS history reflects that he is "in filing and payment compliance." Also, the IRS promised him he could stay in his house until he died, and he took steps consistent with that promise (such as not pulling equity out of his house to make payments beyond what was deemed in "payment compliance").[33]

Mr. Dracopoulos points to examples in the Internal Revenue Manual about when penalties should be abated:[34]

(1) "Death or serious illness in the taxpayer's immediate family may establish reasonable cause for filing [or] paying . . . late (i.e., siblings, parents) . . . ." Internal Revenue Manual § 20.1.1.3.2.2.1; or

(2) "The inability to obtain the necessary records may constitute reasonable cause . . . ." *Id.* § 20.1.1.3.2.2.3; or

---

[33] Def.'s Opp'n to Pl.'s Mot. – ECF No. 58 at 6–9, 14–19, 23, 27–32.

[34] *Id.* at 25.

(3). "If someone other than the taxpayer is authorized to meet the obligation, consider the reasons why that person did not meet the obligation . . . ." *Id.* 20.1.1.3.2.2.1(2); or

(4) "[T]he taxpayer exercised ordinary business care and prudence, but nevertheless was unable to comply with a prescribed duty within the prescribed time." *Id.*

He points out that the Manual acknowledges that abatement may be warranted based on "other acceptable explanation[s]." *Id.* § 20.1.1.3.2(3)(c). "Each case must be individually judged based on the facts and circumstances at hand." *Id.* § 20.1.1.3.2(5).[35]

And he relies on Justice Brennan's concurrence (joined by Justices Marshall, Powell, and O'Conner) in *Boyle*.[36] In *Boyle*, a taxpayer hired an attorney after his mother's death. The attorney did not file the estate return due to a clerical error. 469 U.S. at 242–43. The Court held that the duty to file was the taxpayer's duty, the failure to make a timely filing was not excused by the taxpayer's reliance on an agent, and "such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." *Id.* at 251–52. In his concurrence, Justice Brennan wrote separately

> to underscore the importance of an issue that the Court expressly leaves open. Specifically, I believe that there is a substantial argument that the "ordinary business care and prudence" standard is applicable only to the "ordinary person" — namely, one who is physically and mentally capable of knowing, remembering, and complying with a filing deadline. In the instant case, the taxpayer not only failed to exercise ordinary business care in monitoring the progress of his mother's estate, but also made no showing that he was *unable* to exercise the usual care and diligence required of an executor. The outcome could be different if a taxpayer were able to demonstrate that, for reasons of incompetence or infirmity, he understandably was unable to meet the standard of ordinary care and prudence. In such circumstances, there might well be no good reason for imposing the harsh penalty of § 6651(a)(1) over and above the prescribed statutory interest penalty. *See* 26 USC §§ 6601(a), 6621(b).

*Id.* at 253.

The government counters that the concurrence is not precedent, and the Internal Revenue Manual does not have the force of law or confer rights on taxpayers.[37] It asserts too that "Mr.

---

[35] *Id.* at 25–26.

[36] *Id.* at 26.

[37] Pl.'s Reply in Supp. of Pl.'s Mot. – ECF No. 62 at 9 (collecting cases, including *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006) (the Internal Revenue Manual "does not have the force of law and does not confer rights on taxpayers")).

United States District Court
Northern District of California

1   Dracopoulos fails to meet his burden because the timing and conditions of his misfortunes do not

2   amount to reasonable cause for failure to timely file and pay."[38] It contends that the timing is not a

3   justification because the misfortunes were chronologically not proximate to the filing deadlines for

4   the tax years in question (2002 to 2015): (1) the blindness happened in 1940; (2) the accountant

5   died in the late 1990s; (3) Pier 41 and Mr. Dracopoulos's business closed from 1997 to 2001; (4)

6   his mother died in 1999 or 2000, and the siblings died at an unknown time after that; and (5) the

7   COVID-19 closure of the business was from 2020 to 2022.[39] Also, the government asserts that the

8   events do not warrant a reasonable-cause penalty abatement: (1) Mr. Dracopoulos is capable of

9   knowing, remembering, and complying with a filing deadline, which dispatches the reliance on the

10   Brennan concurrence; (2) Mr. Dracopoulos worked as a music producer in his youth, and he has

11   worked for decades at Alcatraz books and admits he is "very capable of doing things;" (3) the

12   former accountant's death is irrelevant because he cannot rely on an agent; (4) the death of a

13   parent doesn't support reasonable cause; and (5) he has not met his steep burden to show

14   reasonable cause to excuse the late-filing and late-penalty fees.[40]

15      Circumstances can excuse a taxpayer's ability to comply with filing deadlines and make

16   payments. For example, if those in charge of a corporation embezzle funds, incapacitate the

17   company, and render it unable to comply with the tax laws, then there can be reasonable cause.

18   *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 317–19 (9th Cir. 1993) (those

19   circumstances were not present, and there was no reasonable cause) (citing and distinguishing *In re*

20   *Am. Biomaterials Corp.*, 954 F.2d 919, 920–21, 928 (3rd Cir. 1992)). Circumstances beyond a

21   taxpayer's control might excuse compliance with deadlines and payments too: postal delays, illness,

22   or reliance on an attorney or accountant because the taxpayer is "incapable by objective standards of

23   meeting the criteria of 'ordinary business care and prudence.'" *Boyle*, 469 U.S. at 248 n.6. Thus,

24   courts have found reasonable cause if a taxpayer has a disabling reason for not timely filing or

25

26   ───────────────

    [38] *Id.*

27   [39] *Id.*

    [40] *Id.* at 10–14. The government reiterates its arguments in its opposition to Mr. Dracopoulos's motion.
28   Pl.'s Opp'n to Def.'s Mot. – ECF No. 65 at 8–16.

1   paying. *See, e.g.*, *Huszagh v. D'Amico*, 846 F. Supp. 1352, 1358 (N.D. Ill. 1994) (advanced age and

2   failing mental and physical faculties); *In re Erickson*, 172 B.R. 900, 910 (Bankr. D. Minn. 1994) (a

3   quadriplegic taxpayer's inability to ensure compliance or access his bookkeeper's office); *Est. of*

4   *Stuller v. United States*, 55 F. Supp. 3d 1091, 1118 (C.D. Ill. 2014) (a fire, casualty, natural disaster,

5   or other disturbance can be grounds for relief; death or serious illness of a family member can too;

6   in this case, at a bench trial, the taxpayers did not meet their burden of proof), *aff'd*, 811 F. 3d 890

7   (7th Cir. 2016); *cf. Willett v. United States*, No. 19-cv-04364-CRB, 2020 WL 906724, at *1–4 (N.D.

8   Cal. Feb. 25, 2020) (applying *Boyle*, held that able taxpayers could not rely on their longstanding

9   accountant's promise to file returns and assume penalties to establish reasonable cause even with

10   the accountant's serious illness and death).

11       There are undisputed difficulties that Mr. Dracopoulos experienced, and he was unable to

12   manage his affairs for a considerable period. There are substantial evidentiary submissions by the

13   parties, but they are not as accessible as they should be. Partly this is due to repetitive briefs

14   because of how the parties staged the motions. They have dueling (though serially filed) motions:

15   plaintiff's motion, defendant's opposition, defendant's motion, plaintiff's reply in support of

16   plaintiff's motion, plaintiff's opposition to defendant's motion, and defendant's reply in support of

17   defendant's motion. They should have consolidated briefings to avoid repetition (e.g., defendant's

18   opposition and counter motion, in one document). It took twice as long to work through the

19   arguments as a result of how they were raised.

20       The problem is compounded by how the evidence is cited. The government made fact errors in

21   its summary of the tax liability, although it corrected them in its reply. Mr. Dracopoulos cited all of

22   the evidence but he did not always tether it to years. He also assumed — rightly — that disputes of

23   fact precluded summary judgment, at least on the reasonable-cause exception, and so included

24   disputed facts. The parties disagree about the import of some facts: during at least one year, Mr.

25   Dracopoulos made a lot of revenue, but the taxes for other years were trivial, and he also struggled

26

27

28

United States District Court
Northern District of California

1    with making his mortgage payments and credit-card debit.[41] They disagree about the relevance of

2    Mr. Dracopoulos's independence.[42] Independence does not foreclose an inability to prepare

3    financial forms, and this may be a dispute of fact that precludes summary judgment. The arc of the

4    evidence also suggests mounting difficulties. And Mr. Dracopoulos says the government unfairly

5    characterizes an 82-year-old deponent's reporting of his life.[43]

6          Possibly the court could sort out a timeline on its own for the reasonable-cause issue, but that is

7    not its job: a district court has no independent duty "to scour the record in search of a genuine issue

8    of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the

9    evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996);

10    *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court thus sets

11    forth the following process, which will streamline any bench trial too.

12          Mr. Dracopoulos has the burden, and the following process mimics the summary-judgment

13    process. By July 6, 2023, Mr. Dracopoulos must file an opening memorandum with the evidence

14    identified in his three filings (thereby eliminating the repetition that has thwarted easy review). He

15    must tether the evidence to the tax years and the penalty event (e.g., late filing or late payment)

16    and support it (as he did in the earlier filings) by pinpoint citations to the evidence. He must

17    explain why the evidence establishes reasonable cause for each tax year and each penalty event.

18    He can supplement the record with a declaration if necessary.

19          Then, two weeks later, by July 20, 2023, the government must oppose the opening

20    memorandum. That may be an easier process: the government's submission may be only "this is

21    too attenuated" or "these facts show capacity." One week later, Mr. Dracopoulos can reply.

22

23

24    [41] Dracopoulos Dep., Ex. 1 to Bissell Decl. – ECF No. 53-1 at 12 (p. 24:15–23); Tax Returns, Ex. 2 to
        Burks Decl. – ECF No. 53-3.

25    [42] Pl.'s Opp'n to Def.'s Mot. – ECF No. 65 at 11; Dracopoulos Dep., Ex. 1 to Bissell Decl. – ECF No.

26    53-1 at 22 (p. 39:14–15).

27    [43] Def.'s Reply in Supp. of Def.'s Mot. – ECF No. 67 at 17 ("Instead of offering even a peppercorn of
        sympathy, plaintiff takes a one-sided deposition of an 82-year[-old], often confused blind man since
        birth who had earlier in the year been in the hospital for 9 days with a lung infection[,] to question him

28    on events 20 years earlier and seeks to treat him as if he is just like everyone else.").

United States District Court
Northern District of California

1

2    To allow this process, the court will vacate the pretrial conference on July 6, 2023, and the trial

3    date, and it sets a further hearing for August 10, 2023, at 9:30 p.m. This process will illuminate any

     disputes of fact that remain for trial.

4

5    **3.  Life Estate**

6        Mr. Dracopoulos contends that the government is estopped from contesting his life estate in

7    his house.[44] The IRS history shows that the IRS was advised of Mr. Dracopoulos's financial

8    straits, and the revenue officer was directed to tell him about the Taxpayer Advocate Office and

9    help him fill out the Form 911. That never happened: Mr. Dracopoulos did not get the form, did

10   not get the referral, and thus could not avail himself of that resource. The IRS history showed that

11   it would file a lawsuit that included a life estate for Mr. Dracopoulos. The parties characterized

12   that in their stipulation as an agreement by the revenue officer to recommend it, but the history is

13   more specific than "recommend:" the history shows that the IRS told Mr. Dracopoulos that he

14   could remain in his house. It is undisputed that in reliance on that promise, Mr. Dracopoulos

15   refrained from refinancing his house to take out equity. It is also undisputed that in reliance on the

16   promise, Mr. Dracopoulos did not administratively appeal the assessments discussed in the last

17   section.[45] Put another way, there were mechanisms — presumably less onerous than those

18   described in the last section that apply to actions in district court — for challenging the penalties.

19   The government counters that the issue is premature: the court has limited discretion to curtail the

20   government's ability to foreclose on property to obtain tax debts, it does not seek an order of sale

21   at this time, and during settlement negotiations, Mr. Dracopoulos's counsel has refused to

22   negotiate a life estate.[46] It characterizes the representation during administrative proceedings as

23   "an opportunity to remain in [his] home in exchange for full payment of liabilities." It concludes

24

25   _____

     [44] Def.'s Reply in Supp. of Def.'s Mot. – ECF No. 67 at 3–10.

26   [45] *See* Statement (summarizing this evidence).

27   [46] Pl.'s Mot. – ECF No. 53 at 10 n.2; Pl.'s Opp'n to Def.'s Mot. – ECF No. 62 at 14 (citing *United States v. Rodgers*, 461 U.S. 677, 709 (1983), to support the argument about the limited ability to curtail

28   foreclosure).

1   that "Mr. Dracopoulos's refusal to come to terms with the IRS during these negotiations cannot

2   now bind the United States."[47]

3        The traditional elements of a claim of equitable estoppel include the following: "(1) the party to

4   be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so

5   act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be

6   ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Baccei*, 632

7   F.3d at 1147. "Additionally, a party asserting equitable estoppel against the government must also

8   establish that (1) the government engaged in affirmative misconduct going beyond mere negligence;

9   (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will

10  not suffer undue damage by imposition of estoppel." *Id.*

11       First, as to the government's argument that the court has limited ability to curtail its ability to

12  foreclose, this is not about the government's ability to foreclose. The issue is reserving a life estate

13  to Mr. Dracopoulos, a remedy that the agency at minimum recommended and possibly promised.

14       Second, the IRS history recounts representations to Mr. Dracopoulos that seem definitive. But

15  assuming that they are not, then it is an issue of fact that precludes summary judgment. A related

16  issue is that courts recognize that estoppel can be advanced against the government, and the parties

17  did not cite cases illustrating when that happens and when it does not. Thus, by June 23, 2023, the

18  parties must submit simultaneous letter briefs of up to five pages identifying any relevant cases

19  and include — at least in a parenthetical — the facts that illustrate the application of the principle.

20  By June 29, 2023, the parties may submit simultaneous (but optional) reply letter briefs of up to

21  two pages to address the other party's submission.

22       Third, the government suggests that there was no misrepresentation here: there was an offer of a

23  life estate. But a promise that is not honored is a lie. The parties can address the issue in letter briefs.

24       Fourth, Mr. Dracopoulos thinks it was inappropriate for the government to reveal settlement

25  talks. There may be no Federal Evidence Rule 408 foul: that rule is about not using negotiations to

26  prove or disprove a claim, but they can be used for other purposes (witness bias, delay, and the

27

28  [47] *See* Statement (summarizing this evidence).

ORDER – No. 21-cv-09623-LB          17

United States District Court
Northern District of California

1    like). Fed. R. Evid. 408. That said, without unpacking the issue more, it's not the aesthetic of

2    settlement talks to openly use them as leverage. It is not surprising that the life estate was raised in

3    settlement discussions. But whatever the parties' discussions are, the court's inquiry — for

4    estoppel or otherwise — is what happened, and what are the legal consequences.

6                                              **CONCLUSION**

7        On the issues of whether — as a math problem — the government has established the tax

8    liability and the calculations of the penalties (on its theories of liability), the court grants the

9    government's summary-judgment motion. On all other issues, the court denies summary judgment

10   but orders further briefing.

11       On the penalty-abatement issues, the court sets the following schedule: Mr. Dracopoulos must

12   file the opening memorandum (set forth above) by July 6, 2023. The government must oppose by

13   July 20, 2023. Mr. Dracopoulos can reply by July 27, 2023.

14       On the estoppel issues, the parties' simultaneous letter briefs of up to five pages are due by

15   June 23, 2023, and their optional replies of up to two pages are due by June 29, 2023. The parties

16   must confer about whether this issue is moot. The government said at the hearing that it will not

17   pursue foreclosure of Mr. Dracopoulos's home during his lifetime, will not use that threat as

18   leverage in the settlement negotiations, and in essence, gives that assurance to Mr. Dracopoulos to

19   eliminate stress and to allow the parties to pursue their litigated and negotiated interests.

20       The court vacates the pretrial conference on July 6, 2023, sets a further hearing on the

21   summary-judgment motion on August 10, 2023, at 9:30 a.m., and vacates all other dates. This

22   process will illuminate any disputes of fact that remain for trial. By August 3, 2023, the parties

23   must submit a joint update with their proposals for a trial date. The court also will require an ADR

24   process. The parties must submit that proposal by June 22, 2023.

25       This disposes of ECF Nos. 53 and 59.

26   **IT IS SO ORDERED.**

27       Dated: June 15, 2023

28                                              _____
                                                LAUREL BEELER
                                                United States Magistrate Judges

United States District Court
Northern District of California